# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

  v.                                                       Case No. 18-CR-18

**DAVID L. SHANKS JR.,**

    Defendant.

## ORDER AND REPORT AND RECOMMENDATION
## ON DEFENDANT'S PRETRIAL MOTIONS

On March 27, 2018, a grand jury in this district returned a seven-count superseding indictment charging David Shanks with a variety of drug related charges including conspiracy to distribute controlled substances and possessing with intent to distribute controlled substances. Additionally, Shanks is charged with the distribution of drugs which caused death and serious bodily injury to several individuals. Shanks has pled not guilty and a jury trial before the Honorable William Griesbach is scheduled for September 10, 2018.

Before me are Shanks' pretrial motions: (1) motion for release of *Brady* materials; (2) motion for disclosure and request for *in camera* inspection of mental health records; (3) motion for bill of particulars; (4) motion for discovery; (5) motion to sever counts; (6) motion to dismiss Count One on vagueness grounds; and (7) motion to dismiss Counts One, Three, Four, and Five.

## INDICTMENT ALLEGATIONS

Count One of the superseding indictment charges Shanks with conspiring to distribute and possessing with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1). Count Two charges Shanks with knowingly distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Count Three charges Shanks with knowingly distributing a substance containing heroin, a substance containing fentanyl, and methamphetamine, as well as the death of J.V. from the use of heroin, fentanyl, and methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.

Count Four charges Shanks with knowingly distributing heroin and fentanyl and the overdose of E.S. resulting in serious bodily harm from the use of heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Count Five charges Shanks with knowingly distributing heroin and fentanyl and the overdose of K.M. resulting in serious bodily harm from the use of heroin and fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Count Six charges Shanks with knowingly distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Finally, Count Seven charges Shanks with knowingly distributing a substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2.

## ANALYSIS

*1.   Motion to Compel Exculpatory and Impeachment Information*

Shanks moves for an order compelling the government to disclose exculpatory and impeachment information as to all government witnesses. (Docket # 20.) Shanks concedes that the government will comply with his request thirty days prior to trial. He, nonetheless,

files this motion in case there is a dispute, but asks the court to take no action at this time. Accordingly, this motion is moot and unnecessary.

    2.    *Motion for In Camera Inspection of Psychological Records*

Again, Count One charges Shanks with conspiring to distribute controlled substances; namely methamphetamine, heroin, fentanyl, and cocaine, (Superseding Indictment at 2, Docket # 14), which resulted in the death of J.V. from the use of drugs, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. (Superseding Indictment at 3, Docket # 14). Count Three charges Shanks with intentionally distributing heroin, cocaine, methamphetamine, and fentanyl which resulted in the death of J.V. from the use of the drugs in violation of 21 U.S.C. § 846, § 841(b)(1)(A), and 18 U.S.C. § 2. (Superseding Indictment, at 4.) Section 841(b)(1)(C) mandates a twenty-year minimum sentence if "death or serious bodily injury results from the use" of the unlawfully distributed substance.

Shanks moves for an *in camera* inspection of psychological treatment records of J.V., the decedent in Counts One and Three of the superseding indictment. (Motion for *In Camera* Inspection, Docket # 21.) Shanks argues that J.V.'s treatment records may contain exculpatory evidence, including evidence that J.V. died as a result of suicide. Shanks asserts that he should have an opportunity to present the jury with evidence that shows "J.V.'s suicide was an independent cause that releases Shanks of any liability for his death." (Docket # 21 at 3.) He relies on language from *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010), where the court hypothesized a "strange result" where unbeknownst to the drug dealer the buyer intended to commit suicide by taking an overdose of the drugs. *Id*. at 950.

The government counters that neither the facts nor the law support Shanks' request for an *in camera* inspection. (Gov't Resp. at 2, Docket # 32.) Specifically, the government

submits that although J.V. attempted suicide approximately seven years prior to his overdose in September 2017, the evidence shows that his overdose was an accident, not suicide. Additionally, the government argues that the "death results" enhancement is a strict liability offense. (*Id*. at 3 citing *Hatfield*, 591 F.3d 945.)

Whether Shanks is entitled to an *in camera* inspection of J.V.'s treatment records turns on whether the requested documents are material. The government is obligated "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (citing *United States v. Agurs*, 427 U.S. 97, (1976); *Brady v. Maryland*, 373 U.S. 87 (1963)). Evidence is material if it can reasonably have an effect on guilt or innocence. *See Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). When a defendant is seeking confidential medical information, it is to be turned over to a district court for *in camera* review. *United States v. Hach*, 162 F.3d 937, 946 (7th Cir. 1998) (internal citation omitted). However, speculation that the government possesses *Brady* material is not sufficient for *in camera* inspection. *United States v. Mitchell*, 178 F.3d 904, 908 (7th Cir. 1999). A defendant must establish a reasonable probability that the evidence sought would be material. *Davis v. Litscher*, 290 F.3d 943, 947 (7th Cir. 2002).

To assess the materiality of the requested treatment records, I begin with the government's burden on the "death results" enhancement. To prevail at trial on the "death results" enhancement, the government must prove, beyond a reasonable doubt, that J.V. would have lived but for the unlawfully distributed drugs. *Burrage v. United States*, 571 U.S. 204, 204-205 (2014). In *Burrage*, a victim died with multiple drugs in his bloodstream, including metabolites from heroin that had been distributed by the defendant. Although morphine, a heroin metabolite, was the only drug present at a level above the therapeutic

range, the government's experts could not say whether the victim would have lived if he had not taken the heroin. *Id.* at 207. The experts testified only that heroin was a "contributing factor" to a death caused by "mixed drug intoxication." *Id.* In addition to that testimony, the jury was instructed to find "that the heroin distributed by the defendant was a contributing cause of [the victim's] death." *Id.* at 208. The Supreme Court held that, under the statute, it was not enough to show that the distributed drug merely contributed to the victim's death. *See id.* at 209-214. The enhancement applies when "death or serious bodily injury results from the use of [the distributed] substance," which means that the substance must be a "but for" cause of the death. *Id.* at 209.

With the "but for" standard in mind, it is not clear how J.V.'s past suicide attempt is material to the cause of his death in September 2017. For example, would anything in J.V.'s treatment records reveal that on the date of his death, J.V. used multiple drugs, as was the case in *Burrage*? Alternatively, would anything in the records reveal that J.V.'s death was not caused by the drugs allegedly distributed by or conspired to be distributed by Shanks, but by some other means of death? Shanks does not answer these questions. Further, Shanks does not explain how, even if he could show that J.V. was suicidal at the time of his death or that J.V. intentionally took the drugs to commit suicide, that would negate the "but for" causation requirement. The language Congress enacted requires that the death resulted from the use of the unlawfully distributed drug. The *Hatfield* suicide hypothetical notwithstanding, the language does not distinguish between death that is intentional or death that is accidental, only that death resulted.

Shanks also argues that inspection of the records is warranted to show that J.V.'s death was unforeseeable. But reasonable foreseeability is not required for the "death results"

enhancement. Stated differently, once the government shows the "but for" causal connection between the drug and the resulting death, criminal liability attaches without the need to prove foreseeability. As the Seventh Circuit recently stated, every circuit to address the issue has taken this view of the "death results" enhancement. *United States v. Harden*, 893 F.3d 434, 447-448 (7th Cir. 2018) (collecting cases). This is consistent with the Seventh Circuit's own reading of the "results from" language of § 841(b)(1)(C) to impose strict liability for distributing controlled substances when they result in death or serious injury. *Hatfield*, 591 F.3d at 950-51. The Seventh Circuit reasoned "strict liability creates an incentive for a drug dealer to warn his customer about the strength of the particular batch of drugs being sold and to refuse to supply drugs to a particularly vulnerable people." *Id*. at 951.

That said, the Seventh Circuit has also recognized that strict liability has limits as applied to this enhancement. On a conspiracy charge, it is not sufficient for the government to prove that a defendant participated in an overall conspiracy in which a drug user died. *United States v. Walker*, 721 F.3d 828, 836-838 (7th Cir. 2013). Rather, the government must prove a particular defendant responsible for a particular death. *Id*. In other words, the government need not prove that death was reasonably foreseeable for the "death result" enhancement to apply in a case where a defendant directly distributes drugs or uses intermediaries to distribute drugs that result in death. However, in a conspiracy charge, the government must prove that the defendant's relevant conduct encompasses the drugs linked to the death. *Id*. at 839.

Here, Shanks is not only charged in a conspiracy in which J.V.'s death resulted, he is also charged in a substantive count of knowingly distributing drugs to J.V. and that J.V.'s

death resulted from the use of these drugs. Bearing in mind the standards discussed above and how Shanks is charged, he has not shown how the records he seeks are material to the issues a jury will need to decide. Accordingly, I will deny without prejudice Shanks' motion for an *in camera* inspection of J.V.'s treatment records.

    3.    *Motion for Bill of Particulars*

Shanks moves for a bill of particulars. Specifically, Shanks moves for: (1) the government to identify the names of unindicted co-conspirators and their known aliases; (2) the times, places, and dates on which the conspiracy began; (3) information on which Shanks and each co-conspirator joined and withdrew from the conspiracy; (4) a description of any and all overt acts in furtherance of the alleged conspiracy; (5) the names of all participants of any overt acts; (6) the means used to accomplish objectives of the conspiracy; (7) a description of any of Shanks' alleged roles and overt acts in furtherance of the conspiracy; (8) and any other information that would help Shanks prepare his defense.

Federal Rule of Criminal Procedure 7(f) authorizes the court to order the filing of a bill of particulars to fill in facts in the indictment so that the defendant can prepare an adequate defense. *See* Fed. R. Crim. P. 7(f); *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). A bill of particulars is "a more specific expression of the activities the defendant is accused of having engaged in which are illegal." *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991). A bill of particulars is required only where the charges in the indictment are so general that they do not advise the defendant of the specific act of which he is accused. *See id*.

The test for determining whether a bill of particulars should be granted is similar to the test for determining the general sufficiency of the indictment, namely, "whether the

7

indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003) (quoting *Kendall*, 665 F.2d at 134); *Canino*, 949 F.2d at 949. An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated is sufficient to pass this test. *Kendall*, 665 F.2d at 134. Further, a bill of particulars is not required when a defendant can obtain the information necessary for his or her defense through "some other satisfactory form." *Fassnacht*, 332 F.3d at 447, n.2 (quoting *Canino*, 949 F.2d at 949). The Seventh Circuit has held that the government's "open file" policy is an adequate "satisfactory form" of information retrieval, making a bill of particulars unnecessary. *Canino*, 949 F.2d at 949. Specific details of the government's case are not subject to discovery. *United States v. Balsiger*, 644 F. Supp. 2d 1101, 1112 (E.D. Wis. 2009).

      Here, Shanks does not argue that the superseding indictment does not track the statutory language. It does. Additionally, he does not argue that the government has not complied with its open file policy. The Seventh Circuit has stated that a bill of particulars is usually unnecessary when the government is complying with its open file policy. *Canino*, 949 F.2d at 949. Moreover, the government asserts that it has turned over a significant amount of evidence including cell phone text message conversations detailing drug transactions with individuals identified by name and those well known by Shanks. Also, the government states that it intends to comply with its *Brady/Giglio* requirements relating to confidential sources thirty days before trial. Shanks does not appear to be arguing that he is confused about the nature of the charges. Instead, he is seeking greater details about the

government's case. However, "[e]videntiary details of the government's case are specifically not subject to discovery by means of a bill of particulars." *Balsiger*, 644 F. Supp. 2d at 1112. Accordingly, Shanks' motion for bill of particulars is denied.

*4.  Motion to Compel Cell Phone Extraction of Confidential Informants*

Shanks moves for the government to produce cell phone records of confidential informants and cooperating witnesses. The government responds that it has produced the cell phone records already in its possession and agrees to provide cell phone records as requested by Shanks. This motion is therefore uncontested. Still, Shanks asks for an order to prevent the "erasing or destroying of vital exculpatory and impeachment evidence." Accordingly, the government, to the extent such records exists, shall disclose to Shanks cell phone records and related information from confidential informants and cooperating witnesses that either involve Shanks or any alleged drug distributors that may have been responsible for the drugs resulting in death or serious bodily injury alleged in the Superseding Indictment. Therefore, this motion is granted.

*5.  Motion to Sever Counts*

Shanks moves for severance. Specifically, Shanks argues that Counts One, Three, Four, and Five involve different drugs, different times, different theories, and different people than Counts Two, Six, and Seven, thus warranting severance. Additionally, Shanks argues that Counts Two and Six involve different drugs, times, theories, and people from Count Seven.

Federal Rule of Criminal Procedure 8(a) permits two or more offenses to be charged in the same indictment if the offenses charged are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common

9

scheme or plan." Fed. R. Crim. P. 8(a); *see also United States v. Quinn*, 365 U.S. 256, 263 (1966). Rule 8(a) is to be "broadly construed . . . 'to allow liberal joinder in order to enhance judicial efficiency.'" *United States v. Nettles*, 476 F.3d 508, 516 (7th Cir. 2007) (quoting *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995)). In particular, joinder of offenses in a single trial reduces the expenditure of judicial and prosecutorial time and reduces the burdens on witnesses from testifying at multiple trials. *See United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987). Therefore, the risk of prejudice arising from a joint trial is generally outweighed by the economies of a single trial. *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006).

Here, Shanks is charged with conspiracy to distribute and possession with intent to distribute controlled substances. He is also charged with substantive counts of distributing drugs within the time frame of the conspiracy. These offenses are sufficiently similar to satisfy the same or similar character requirement of Rule 8(a). "If offenses are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied as far as Rule 8(a) is concerned." *United Stated States v. Coleman*, 22 F.3d 126, 131 (7th Cir. 1994).

However, even if offenses are properly joined, Rule 14(a) authorizes a district court to order separate trials on individual counts "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses" for a single trial. *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998) (quoting Fed. R. Crim. P. 14(a)). It is the defendant's burden to demonstrate a strong showing of prejudice. *United States v. Moya–Gomez*, 860 F.2d 706, 767–68 (7th Cir. 1988). A mere showing of some prejudice will not warrant severance. *United States v. Madison*, 689 F.2d 1300, 1305 (7th Cir. 1982). Rather, defendants must show

that they are unable to obtain a fair trial without severance, not merely that their chances of acquittal would be higher at a separate trial. *Alexander*, 135 F.3d at 477; *United States v. Thornton*, 197 F.3d 241, 255 (7th Cir. 1999). Thus, a motion to sever should be denied unless there appears "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Here, Shanks argues that even if the offenses are properly joined, severance under Rule 14 is warranted because a joint trial will prejudice his defense. Specifically, he argues that a joint trial could prejudice his ability to present separate defenses for various charges. He also argues that a joint trial would create the danger that the jury would use evidence admissible as to one count to infer criminal disposition as to another count. Similarly, he argues that a joint trial raises the danger that the evidence as to each separate count will "cumulate in the jurors' minds."

None of these arguments taken alone or in combination support the need for severance. The Seventh Circuit has stated that limiting instructions for the jury to consider each count separately are often sufficient to cure any risk of prejudice. *United States v. Carter*, 695 F.3d 690, 700 (7th Cir. 2012). Relatedly, courts presume that a jury will capably sort through the evidence and will follow limiting instructions from the court to consider each count separately. *Thornton*, 197 F.3d at 256. Shanks has not shown that jury instructions would be inadequate to prevent confusion nor has he shown that the jury would have difficulty following an instruction to consider the evidence as to each count separately. Thus, Shanks has not met his burden to show that severance is necessary. Shanks' motion for severance is denied.

*6. Motion to Dismiss Count One on Vagueness*

Shanks moves to dismiss Count One on vagueness grounds. Because he is charged with conspiring to distribute drugs as well as possessing drugs with intent to distribute them, Shanks asserts that:

> "[i]t is unclear as to which, if any, illegal agreement Shanks allegedly joined, or when, or how Shanks' actions materially furthered the supposed conspiracy or how the disparate acts identified for a single, unified conspiracy as opposed to independent and multiple conspiracies involving different controlled substances."

(Shanks' Br. in support of Motion to Dismiss at 5, Docket # 25.) Count One states that between approximately August 2017 and October 5, 2017 Shanks:

> 1. Knowingly and intentionally conspired with persons . . . to distribute and possess with intent to distribute controlled substances, in violation of [21 U.S.C. § 841(a)(a)].
>
> 2. The quantity of drugs involved in the conspiracy attributable to Shanks as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, involved 50 grams or more of methamphetamine, a Schedule II controlled substance; heroin, a Schedule I controlled substance; fentanyl, a Schedule II controlled substance; and cocaine, a Schedule II controlled substance.
>
> 3. The death of J.V. on or about September 10, 2017, resulted from the use of the heroin, fentanyl, and methamphetamine distributed by Shanks and by conspirators.
>
> 4. The overdose of E.S. on or about September 22, 2017, resulted in serious bodily injury to E.S. from the use of the heroin and fentanyl distributed by Shanks and by conspirators.
>
> 5. The overdose of K.M. on or about September 22, 2017, resulted in serious bodily injury to K.M. from the use of the heroin and fentanyl distributed by Shanks.
>
> All in violation of [21 U.S.C. § 846, § 841(b)(1)(A), and 18 U.S.C. § 2].

(Superseding Indictment at 1-2, Docket # 15.)

The superseding indictment tracks the statutory language and Shanks does not contend otherwise. It also complies with the requirement of Fed. R. Crim. P. 7(c) that the indictment be a "plain, concise and definite written statement of the essential facts constituting the charged." Shanks merely argues that that Count One is so vague that he is not informed of the charge and is unable to prepare a defense. This is not supported by the face of the superseding indictment. Count One charges Shanks with knowingly and intentionally conspiring to distribute and possessing with intent to distribute controlled substances. (Docket # 15.) It informs Shanks of the timing of the alleged activities (between August 2017 and October 5, 2015); the type of drugs that are involved (methamphetamine, heroin, fentanyl, and cocaine); as well as the dates of the overdoses that occurred as a result of Shanks' alleged involvement in the conspiracy to distribute controlled substances. This is sufficient to inform an ordinary person of what he is charged with and to allow him to prepare a defense.

Additionally, because the government does not have to prove with whom a defendant conspired, only that he joined an agreement, the indictment is not insufficient for failing to identify Shanks' alleged co-conspirators. *United States v. Payton*, 328 F.3d 910, 911 (7th Cir. 2003), *cert. denied*, 540 U.S. 881 (Oct. 6, 2003). As Shanks acknowledges, his "constitutional right is to know the offense with which he is charged, not to know the details of how it be proved." *Kendall*, 665 F.3d at 135. Count One demonstrates sufficient detail in what Shanks is charged with and thus does not suffer from vagueness. I recommend that Shanks' motion to dismiss Count One on vagueness grounds be denied.

7. *Motion to Dismiss Counts One, Three, Four, and Five*

    7.1    Motion to Dismiss on Vagueness Grounds

Shanks moves to dismiss Counts One, Three, Four, and Five of the superseding indictment on vagueness grounds. Specifically, Shanks challenges the terms "serious bodily injury" and "serious bodily harm" for vagueness.

"A statute is unconstitutionally vague if it either '1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or 2) fails to provide explicit standard to prevent arbitrary and discriminatory enforcement by those enforcing the statute.'" *United States v. Olofson*, 563 F.3d 652, 659-660 (7th Cir. 2009) (quoting *United States v. Lim*, 444 F.3d 810, 915 (7th Cir. 2006)). In vagueness challenges not involving First Amendment freedoms, a court must examine the argument in light of the particular case before them. *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

"Serious bodily injury" is defined by 21 U.S.C. § 802(25) as "bodily injury which involves: (A) a substantial risk of death; (B) protracted and obvious disfigurement; (C) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 21 U.S.C. § 802(25). Shanks argues that these definitional terms are themselves vague and not understandable to the ordinary person. As a result, citing to *Johnson v. United States*, 135 S. Ct. 2551 (2015), Shanks argues there is no fair notice of what conduct is prohibited.

*Johnson* concerns the residual clause of the Armed Career Criminal Act which defined violent felony as conduct "that presents a serious potential risk of physical injury to another." *Id*. at 2554. The Court found two features of the residual clause made it unconstitutionally vague. *Id*. at 2557-58. First, the Supreme Court found the clause left great uncertainty about how to measure "serious potential risk of injury to another."

Second, the Supreme Court found that the clause left uncertainty about how much risk it takes for a crime to qualify as a violent felony. *Id*. The Court also cited to a long line of cases attempting to define the residual clause as evidence of the difficulties and uncertainties in applying the provision. *Id*. at 2560.

Applying these lessons, the "serious bodily injury" provision is not as shapeless as the residual clause such that it rises to the level of unconstitutionally vague. Unlike with the residual clause, the definitional terms for "serious bodily injury" provide a measuring yard to know which kinds of injuries trigger the enhancement. The enhancement is not triggered by any serious bodily injury. It is triggered by three specified classes of serious bodily injury. First, it can be triggered by bodily injury which involves a substantial risk of death. Shanks asks how are we to know what poses as a substantial risk of death? He argues that just about any injury poses a substantial risk of death. The provision does not seek to reach any injury, however. The top synonyms for substantial are: considerable, real, significant, important, notable, and major.[1] Accordingly, the provision contemplates not just any injury, but injury which poses risk of death, and not just any risk of death, but considerable, significant, or major risk of death. *See United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015) ("To determine the plain meaning of words, we frequently look to dictionary definitions.") (internal citation omitted). Thus, the definitional terms give a way of measuring the kind of bodily injury which constitutes a substantial risk of death.

Next, the provision is triggered by protracted or obvious disfigurement. Here too, we can turn to the dictionary. The synonyms for disfigurement are defacement, mutilation, and

---

[1] *Meriam-Webster Dictionary:* https://www.merriamwebster.com/thesaurus/substantial (last visited July 12. 2018).

scarring.[2] Additionally, the provision seeks to reach not just any disfigurement, but those that are protracted (long-lasting, prolonged) and obvious (easily perceived, apparent). So, here too the terms give the scope of the reach of the provision and notice of which kinds of injuries are within its reach.

Likewise, the third class of bodily injury covered by the provision is also measurable given its definition. The third class covers "protracted loss or impairment of the function of a bodily member, organ, or mental faculty." Again, Shanks argues that any injury may fall into this category. This reading of the provision does not account for all of its terms, specifically ignores the modifier—protracted—which, as discussed above, means prolonged or long-lasting. As such, Shanks has not shown that the "serious bodily injury" is unconstitutionally vague.

As to the term "serious bodily harm," the government confesses scrivener's error and states that it will correct the error and replace it with the correct statutory term, "serious bodily injury." (Gov't Resp. at 2, Docket # 30.) Material amendments to the indictment must be made by re-submission to the grand jury. *United States v. McNeese*, 901 F.2d 585, 601 (7th Cir. 1990). However, amendments that are not material may be made without re-submission to the grand jury. *United States v. Lorefice*, 192 F.3d 647, 653 (7th Cir. 1999). Shanks argues for dismissal, rather than amendment. He argues that irreparable confusion has already been created. I disagree. This is not an amendment on the eve of trial or mid-trial such that Shanks has to change his defense or his preparation. Trial in this case is not scheduled until September. As such, Shanks will not be prejudiced by correction of the error.

---

[2] *Thesaurus*: www.thesaurus.com/browse/disfigurement (last visited July 16, 2018).

For these reasons, I recommend that Shanks' motion to dismiss Counts One, Three, Four, and Five of the indictment for vagueness be denied.

### 7.2 Motion to Dismiss on Lack of Specificity

Shanks also argues that Counts One, Three, Four, and Five fail for lack of specificity. As discussed above, Count One tracks the statutory language and meets the plain concise requirement of Fed. R. Crim. P. 7(c). Count Three likewise meets the sufficiency requirement. It plainly charges Shanks with distribution of controlled substances resulting in the death of J.V. in violation of 21 U.S.C.§ 841 (b)(1)(C). Nothing more is required.

Counts Four and Five contain the erroneous "seriously bodily harm" term which, as discussed above, the government states it will correct. Because that language will be corrected, that error in itself does not warrant a finding of insufficiency.

Overall, Shanks argues that the superseding indictment is lacking because it does not provide the specificity needed to enable him to prepare a defense and be protected from double jeopardy. This argument fails. "Indictments are reviewed on a practical basis and in their entirety, rather than 'in a hypertechnical manner.'" *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). The counts relate to overdoses that occurred as a result of consumption of controlled substances. Each count contains a specific day of the overdose as well as the victim. There is no plausible reason to believe that Shanks would not be protected from double jeopardy in future cases concerning these charges. Accordingly, I recommend Shanks' motion to dismiss Counts One, Three, Four, and Five for lack of specificity be denied.

**NOW, THEREFORE, IT IS ORDERED** Shanks' motion to release *Brady* material (Docket # 20) is **MOOT**;

**IT IS FURTHER ORDERED** that Shanks' motion for *In Camera* Inspection (Docket # 21) is **DENIED**;

**IT IS ORDERED** that Shanks' motion for bill of particulars (Docket # 22) is **DENIED**;

**IT IS FURTHER ORDERED** that Shanks' motion to compel cell phone extraction (Docket # 23) is **GRANTED**;

**IT IS FURTHER ORDERED** that Shanks' motion to sever (Docket # 24) is **DENIED**;

**IT IS FURTHER RECOMMENDED** that Shanks' motion to dismiss Count One on vagueness grounds (Docket # 25) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Shanks' motion to dismiss Counts One, Three, Four, and Five (Docket # 26) be **DENIED**.

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 17th day of July, 2018.

                        BY THE COURT

                        s/ *Nancy Joseph*
                        NANCY JOSEPH
                        United States Magistrate Judge